UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BRUCE L. CLARK,                              :
         Plaintiff,                              :
                                             :
    v.                                       :    No. 5:21-cv-01855
                                             :
ALIGHT SOLUTIONS, LLC,                       :
         Defendant.                              :
_____

**O P I N I O N**
Motion to Deny All Requests of Exelon Corp., ECF No. 27 – Dismissed
Motion to Dismiss, ECF No. 24 – Dismissed
Motions for Default Judgment, ECF Nos. 29 & 31 – Dismissed

**Joseph F. Leeson, Jr.**                                                                                       **January 5, 2022**
**United States District Judge**

      **I.**           **INTRODUCTION**

      Bruce Clark and his ex-wife divorced several years ago. During their divorce proceedings, the Court of Common Pleas of Lancaster County entered a qualified domestic relations order that diverted a portion of Clark's pension to his ex-wife. Specifically, Clark's ex-wife received a payment of $782.20 each month from his pension plan.

      According to Clark, the monthly payments to his ex-wife were supposed to stop after thirty months. However, his ex-wife has received payments for approximately sixty months and continues to receive payments to this day.

      Believing that Alight Solutions, LLC, was the administrator of his pension plan, Clark wrote several letters to Alight demanding that it stop sending payments to his ex-wife. Nevertheless, the payments continued. So, acting pro se, Clark brought this lawsuit against Alight seeking to stop the payments and be reimbursed for past payments.

Alight never responded to the Complaint. Instead, Exelon Corporation responded, explaining that it was the true administrator of Clark's pension plan, and that Alight simply offers administrative support to Exelon. Exelon also filed a motion to dismiss the Complaint. Clark filed his own motions, asking the Court to ignore any requests made by Exelon because it is not a party named in the Complaint and for default judgment against Alight.

Since the Court determines that it does not have subject matter jurisdiction over this case, it cannot decide any of the pending motions. Instead, the Court dismisses the Complaint without prejudice.

## II.     BACKGROUND[1]

### a.     Alleged Facts

Clark is currently the beneficiary of a PECO Pension Plan. *See* Com. 3, ECF No. 1. Under the Plan, the Plan Administrator makes monthly payments to Clark.[2] However, in December 2016, the Court of Common Pleas of Lancaster County (the State Court) certified a qualified domestic relations order (QDRO) that diverted a portion of the Plan's monthly payments to Clark's ex-wife. *See generally* QDRO, ECF No. 1-1.

The State Court entered the QDRO pursuant to "the applicable Domestic Relations Laws of the Commonwealth of Pennsylvania . . . as a result of the Order of divorce or dissolution between

---

[1] The facts are taken from the Complaint and "exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
All reasonable inferences are drawn in Clark's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[2] In the Complaint, Clark asserts that Alight is the Plan Administrator. *See* Com. 3. However, the qualified domestic relations order, *see* ECF No. 1-1 ¶ 4, and the written Plan itself, *see* ECF No. 28-2 ¶ 8.1, state that Exelon is the Plan Administrator. Either way, the identity of the Plan Administrator does not alter the Court's analysis in this Opinion.

[Clark] and [his ex-wife], and/or as a result of the Postnuptial Agreement executed by the parties." *Id.* ¶¶ 5, 6. Regarding payments from the Plan, the QDRO "assigns to [the ex-wife] an amount equal to $782.20, commencing January 1, 2017, . . . and continuing to [the ex-wife] until the earlier to occur of her death or [Clark's] death." *Id.* ¶ 8. Another provision of the QDRO states,

> [i]t is the intention of the parties that this QDRO continue to qualify as a QDRO under Section 414(p) of the Internal Revenue Code, as it may be amended from time to time, and that the Plan Administrator shall reserve the right to reconfirm the qualified status of the Order at the time benefits become payable hereunder.

*Id.* ¶ 13. Finally, the QDRO explains that "[t]he [State] Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein." *Id.* ¶ 15.

According to Clark, the monthly payments of $782.20 to his ex-wife expired after thirty months. *See* Com. 3. As a result, he wrote to Alight—who Clark alleges is the Plan Administrator—after thirty monthly payments had been made to his ex-wife, notifying it that the full monthly payment under the Plan should now go to him. *See* ECF No. 1 Exs. B–G. However, the Plan Administrator continued to make the monthly payments of $782.20 to the ex-wife instead of paying the full amount to Clark. *See* Com. 3.

Believing that the continued payments to his ex-wife were "criminal," Clark filed a private complaint with the Lancaster District Attorney, alleging that the payments to his ex-wife constituted "knowing theft." ECF No. 1 Ex. F. An Assistant District Attorney and County Detective reviewed Clark's private complaint and dismissed it for lacking prosecutorial merit. *See id.*

Next, Clark initiated a civil action in the State Court against his ex-wife regarding, in part, what payments were owed to his ex-wife. *See* docket for case CI-1979-MAY-262 in the Lancaster County Court of Common Pleas. After Clark's requested relief was denied, he petitioned the Pennsylvania Supreme Court for an allowance of appeal. *See id.* The petition was denied. *See id.*

Clark later initiated another civil action in the State Court against his ex-wife. *See* docket for case CI-18-08912 in Lancaster County. Then, Clark sued his ex-wife for a third time in the State Court. *See* docket for case CI-19-00166 in Lancaster County. As in the prior lawsuits, Clark tried to reclaim payments made to his ex-wife pursuant to the QDRO, arguing that such payments belonged to him. *See id.*

Clark acted pro se in each of the suits brought in the State Court. None of his attempts to stop his ex-wife from receiving the monthly payments were successful.

b.   **Procedural History**

The Complaint in this case is yet another attempt by Clark to stop his ex-wife from receiving the monthly payments of $782.20. This time, however, Clark does not name his ex-wife as a defendant. Instead, the Complaint identifies Alight as the sole defendant.

In the Complaint, Clark asserts that this Court has subject matter jurisdiction over the case because it involves a "felony criminal action involving the willful and deliberate failure to follow the requirements of [the QDRO]," which raises a federal question according to Clark.[3] *See* Com. 2. Clark asks this Court to order that payments under the Plan be made to him, not to his ex-wife. *See id.* at 4. He also asks the Court to order that he be reimbursed for all payments that have been made to his ex-wife that were made after the thirty-month mark. *See id.* Lastly, he asks that the Court award him his costs for bringing this suit and "a penalty" in the amount of $27,232. *See id.*

Exelon Corporation moves the Court to dismiss the Complaint and argues that Clark improperly named Alight as a defendant because Exelon is the true Plan Administrator. *See* Mot.,

---

[3]   In addition to checking a box on the Complaint that asserts this Court has subject matter jurisdiction because the Complaint raises a federal question, Clark also highlights that the QDRO is "from another state" and therefore this case involves "interstate criminal activity." Com. 2. Since the Court must construe Clark's pleadings liberally because he is a pro se plaintiff, it assumes that Clark asserts in his Complaint that the Court has subject matter jurisdiction over this case by way of diversity too.

ECF No. 24. Exelon's Motion, which argues, in part, that this Court does not have subject matter jurisdiction over the case, led to a flurry of follow up motions, responses, and letters from both parties: Clark filed a motion seeking to omit Exelon as a party to the case and Exelon responded; Clark filed a motion for default judgment and Exelon responded; Clark filed a second motion for default judgment and Exelon responded; lastly, Clark filed a letter-brief and Exelon responded. *See* ECF Nos. 27–36.

In his filings, Clark argues that Exelon's filings are full of "nit-picking tenuous language and legal mumbo-jumbo." ECF No. 31. He also points out that Exelon's filings have "grammatical errors." ECF No. 34. In addition, he issues a warning to the Court that if it does not resolve the case soon, then "a one-time sum of fifty thousand dollars will be added to the penalty section of the ongoing Judgment Sum Certain." ECF No. 31.

Clark asserts that "[i]t is well past time to move on" and asks this Court for "HELP!" ECF No. 34. He beseeches the Court with the following: "Can I trust the Court to be honest and fair? I hope so." *Id.*

### III.      LEGAL STANDARDS — Review of Applicable Law

Subject matter jurisdiction refers to a court's authority to hear certain types of cases. Federal courts have limited jurisdiction, and the "[plaintiff] bears the burden of demonstrating subject matter jurisdiction." *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). Generally, there are two types of cases over which federal courts have subject matter jurisdiction: diversity cases or cases that raise a federal question.

For diversity jurisdiction to exist, the plaintiff must show two things. First, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). This requirement is met when the plaintiff's request for relief is greater than $75,000, and it is not "a legal certainty that the plaintiff cannot recover" the necessary amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283,

289 (1938). Second, the suit must be between citizens of different states or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

For federal question jurisdiction to exist, the plaintiff must allege a claim that raises a federal question. A federal question is raised if a claim arises under the United States Constitution, federal laws, or a U.S. treaty. *See id.* § 1331.

Since a court has no authority in matters over which it does not have jurisdiction, it has a "continuing obligation to assess its subject matter jurisdiction" during a case. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). If a court determines that it does not have jurisdiction over a case, it "can dismiss a suit sua sponte for lack of subject jurisdiction at any stage in the proceeding." *Id.*

IV.     ANALYSIS

Clark asserts that this case involves a "felony criminal action" and "interstate criminal activity." In reality, this case involves the interpretation of the QDRO between Clark and his ex-wife. The Court must dismiss this case and each pending motion because it does not have subject matter jurisdiction over the case. Clark's Complaint does not sufficiently allege diversity jurisdiction, and it does not raise a federal question. Even if Clark's Complaint did sufficiently allege subject matter jurisdiction, the *Rooker-Feldman* doctrine would bar this Court from reviewing this case because essentially the same issues have been litigated already in the State Court.

    a.     **Clark's Complaint does not sufficiently allege diversity jurisdiction or federal question jurisdiction.**

First, Clark's Complaint does not satisfy diversity jurisdiction because Clark does not allege that the amount in controversy is greater than $75,000. The relief Clark asks for includes past payments made to his ex-wife and other personal costs, including a "penalty." *See* Com. 4. These

total $43,963.27,[4] which is not more than $75,000—the threshold needed for diversity jurisdiction to exist. The Court therefore does not have subject matter jurisdiction by way of diversity.

Second, Clark's Complaint does not raise a federal question. The Plan is a corporate benefit program, and therefore Clark's claim that he is entitled to payments under the Plan does not involve the Constitution or any other federal law. If Clark has a claim, then it arises under the QDRO. But the QDRO is not a federal law or treaty of any kind either; it "is a domestic relations order" explaining how certain property, payments from a pension plan, should be split between divorced parties. *See Prol v. Prol*, 935 A.2d 547, 549 n.2 (Pa. Super. Ct. 2007).

Normally, the Employee Retirement Income Security Act of 1974 (ERISA) preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, ERISA does "not apply to qualified domestic relation orders" such as the QDRO. *Id.* § 1144(b)(7). The definition of a qualified domestic relations order is provided in ERISA. *See id.* §§ 1056(d)(3)(B)(i)–(ii)

Clark does not challenge whether the QDRO is a qualified domestic relations order under ERISA; he acknowledges that it is a "Court certified Qualified Domestic Relations Order." Com. 3. Instead, his claim "involve[s] the entry or terms of a qualified domestic relations order where state law would control." *Holz v. Holz*, No. CIV. A. 99-4918, 1999 WL 1210835, at *1 (E.D. Pa. Dec. 9, 1999). In other words, Clark's Complaint does not bring a claim that arises under ERISA or any other federal law, and therefore it does not raise a federal question.

---

[4] The Court arrives at this number by using the following formula: 30 x $782.20 + $20,497.27 = $43,963.27 (number of months since July 2019, the time when payments should have ceased to the ex-wife according to Clark, which is 30 (from July 2019 through December 2021), multiplied by the monthly payment, which is $758.20, and add Clark's alleged personal costs and penalty, which is $20,497.27).
Clark also alleges that he is owed interest on the payments to his ex-wife at a rate of 18% per annum. But even with this interest added, he would not reach the required amount in controversy for diversity jurisdiction.

b.     **Even if Clark sufficiently alleged subject matter jurisdiction over this case, the *Rooker-Feldman* doctrine bars this Court from reviewing the case.**

The *Rooker-Feldman* doctrine prevents plaintiffs who have lost in state court proceedings from claiming that the state court judgment violates their rights and then re-litigating the same issues in a federal district court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "Because the doctrine divests the court of subject matter jurisdiction, it may be raised at any time by either party or by the court sua sponte." *In re Madera*, 388 B.R. 586, 597 (E.D. Pa. 2008) (*citing Desi's Pizza, Inc. v City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003)).

Clark has already litigated the interpretation of the QDRO and its terms three times in State Court and lost each time. Even if Clark had a federal claim regarding the QDRO that he did not raise in State Court, the *Rooker-Feldman* doctrine still bars this Court from hearing such a claim now because it would be "inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). The claims Clark brings here are inextricably intertwined with the prior State Court adjudications because the relief Clark seeks in this Court could only be given "if predicated upon a conviction that the state court was wrong." *Id.*

In other words, Clark asked the State Court to stop his ex-wife from receiving payments under the QDRO; the State Court declined. Clark now asks this Court to do the exact same thing. In order for this Court to give Clark what he asks for, it must first decide that the State Court was wrong. This is precisely the thing that the *Rooker-Feldman* doctrine prohibits, and accordingly the doctrine divests this Court of jurisdiction over this case.

## V. CONCLUSION

For the reasons explained in this Opinion, the Court dismisses the Complaint without prejudice.[5] Simply put, there is no federal court jurisdiction, and further, the matters underlying this dispute have already been ruled upon by the State Court, precluding a federal court from becoming involved under the *Rooker-Feldman* doctrine.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[5] Since this Court has an obligation to construe the pleadings of pro se plaintiffs liberally, s*ee Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), and since it cannot be said that it is impossible for Clark to establish this Court's jurisdiction over this matter, the Court permits Clark an opportunity to file an Amended Complaint so long as he does so within 21 days of the date of this Opinion. However, the Court notes that Clark should only file an Amended Complaint if he can sufficiently allege both that the Court has subject matter jurisdiction and why the *Rooker-Feldman* doctrine does not prohibit the Court from reviewing the Amended Complaint.