UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BRUCE L. CLARK,                                 :
         Plaintiff,                :
                                   :
         v.                        :   No. 5:21-cv-01855
                                   :
ALIGHT SOLUTIONS, LLC,                          :
         Defendant.                :
_____

**O P I N I O N**
Motion to Dismiss, ECF No. 44 – Granted

**Joseph F. Leeson, Jr.**                                                                **March 11, 2022**
**United States District Judge**

**I.      INTRODUCTION**

      Following Bruce Clark's divorce, the State Court issued a qualified domestic relations order, which split Clark's retirement payments between him and his ex-wife. According to Clark, the partial payments to his ex-wife should have stopped in January 2017. However, the payments continued, so he filed multiple lawsuits against his ex-wife in the State Court attempting to stop the payments to her.

      Clark's efforts failed in the State Court, so he next sued the administrator of his retirement plan in this Court. This Court dismissed that suit without prejudice because Clark had not sufficiently alleged that the Court had subject matter jurisdiction over his claim.

      Clark then filed an amended complaint with this Court, again attempting to stop the payments to his ex-wife. However, the Court determines that it still does not have subject matter jurisdiction over his claim. In addition, even if the Court had subject matter jurisdiction, it is barred from reviewing his claim, or would abstain from adjudicating his claim, under the *Rooker-Feldman* doctrine and domestic relations doctrine.

## II. BACKGROUND

### a. Alleged Facts[1]

Clark is currently the beneficiary of a PECO Pension Plan. *See* Orig. Compl. 3, ECF No. 1. Under the Plan, the Plan Administrator makes monthly payments to Clark.[2] However, in December 2016, the Court of Common Pleas of Lancaster County (the State Court) certified a qualified domestic relations order (the QDRO) that diverted a portion of the Plan's monthly payments to Clark's ex-wife. *See generally* QDRO, ECF No. 1-1.

The State Court entered the QDRO pursuant to "the applicable Domestic Relations Laws of the Commonwealth of Pennsylvania . . . as a result of the Order of divorce or dissolution between [Clark] and [his ex-wife], and/or as a result of the Postnuptial Agreement executed by the parties." *Id.* ¶¶ 5, 6. Regarding payments from the Plan, the QDRO "assigns to [the ex-wife] an amount equal to $782.20, commencing January 1, 2017, . . . and continuing to [the ex-wife] until the earlier to occur of her death or [Clark's] death." *Id.* ¶ 8. Another provision of the QDRO states,

> [i]t is the intention of the parties that this QDRO continue to qualify as a QDRO under Section 414(p) of the Internal Revenue Code, as it may be amended from time to time, and that the Plan Administrator shall reserve the right to reconfirm the qualified status of the Order at the time benefits become payable hereunder.

---

[1] The facts are taken largely from the Original Complaint and "exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
For purposes of adjudicating Defendants' arguments under Rule 12(b)(6), all reasonable inferences are drawn in Clark's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[2] In the Original Complaint, Clark asserted that Alight was the Plan Administrator. *See* Orig. Compl. 3. However, the qualified domestic relations order, *see* ECF No. 1-1 ¶ 4, and the written Plan itself, *see* ECF No. 28-2 ¶ 8.1, state that Exelon is the Plan Administrator. Either way, the identity of the Plan Administrator does not alter the Court's analysis in this Opinion.

*Id.* ¶ 13. Finally, the QDRO explains that "[t]he [State] Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein." *Id.* ¶ 15.

According to Clark, the monthly payments of $782.20 to his ex-wife expired after thirty months. *See* Orig. Compl. 3. As a result, he wrote to Alight—who Clark alleges is the Plan Administrator—after thirty monthly payments had been made to his ex-wife, notifying it that the full monthly payment under the Plan should now go to him. *See* ECF No. 1 Exs. B–G. However, the Plan Administrator continued to make the monthly payments of $782.20 to the ex-wife instead of paying the full amount to Clark. *See* Orig. Compl. 3.

Believing that the continued payments to his ex-wife were "criminal," Clark filed a private complaint with the Lancaster County District Attorney, claiming that the payments to his ex-wife constituted "knowing theft." ECF No. 1 Ex. F. An Assistant District Attorney and County Detective reviewed Clark's private complaint and dismissed it for lacking prosecutorial merit. *See id.*

Next, Clark initiated a civil action in the State Court against his ex-wife regarding, in part, what payments were owed to his ex-wife. *See* docket for case CI-1979-MAY-262 in Lancaster County, Pennsylvania. After Clark's requested relief was denied, he petitioned the Pennsylvania Supreme Court for an allowance of appeal. *See id.* The petition was denied. *See id.*

Clark later initiated another civil action in the State Court against his ex-wife. *See* docket for case CI-18-08912 in Lancaster County, Pennsylvania. Then, Clark sued his ex-wife for a third time in the State Court. *See* docket for case CI-19-00166 in Lancaster County, Pennsylvania. As in the prior lawsuits, Clark tried to reclaim payments made to his ex-wife pursuant to the QDRO, arguing that such payments belonged to him. *See id.*

Clark acted pro se in each of the suits brought in the State Court. None of his attempts to stop his ex-wife from receiving the monthly payments were successful.

b. **Procedural History**

Acting pro se once more, Clark filed his Original Complaint with this Court. The Original Complaint was yet another attempt by Clark to stop his ex-wife from receiving the monthly payments of $782.20. This time, however, Clark did not name his ex-wife as a defendant. Instead, the Original Complaint identified Alight as sole defendant.

In the Original Complaint, Clark argued that this Court had subject matter jurisdiction over the case because it involved a "felony criminal action involving the willful and deliberate failure to follow the requirements of [the QDRO]," which raised a federal question according to Clark.[3] Orig. Compl. 2. Clark asked this Court to order that payments under the Plan be made to him, not to his ex-wife. *See id.* at 4. He also asked the Court to order that he be reimbursed for all payments that had been made to his ex-wife that were made after the thirty-month mark. *See id.* Lastly, he asked that the Court award him his costs for bringing the suit and "a penalty" in the amount of $27,232. *See id.*

Exelon Corporation moved to dismiss the Original Complaint and argued that it was the proper defendant in the case, not Alight. *See* First Mot., ECF No. 24. Exelon's First Motion argued, in part, that this Court did not have subject matter jurisdiction over the case.

The Court dismissed Clark's Original Complaint without prejudice primarily for two reasons. *See* ECF No. 37. First, the Court determined that it did not have subject matter jurisdiction over Clark's claim. Second, the Court determined that even if it did have subject matter jurisdiction over Clark's claim, the *Rooker-Feldman* doctrine barred the Court from hearing the case because Clark had already litigated essentially the same claim in the State Court.

---

[3]   In addition to checking a box on the Original Complaint that asserted this Court had subject matter jurisdiction because it raised a federal question, Clark also highlighted that the QDRO is "from another state" and therefore the case involved "interstate criminal activity." Orig. Compl. 2. Since the Court construed Clark's pleadings liberally, it assumed that Clark asserted in his Original Complaint that the Court had subject matter jurisdiction over the case by way of diversity too.

Clark then filed an amended complaint. *See* Amend. Compl, ECF No. 40. In his Amended Complaint, Clark argues that the Court has diversity subject matter jurisdiction over his claim "due to the other parties residing in another state within the United States" and because the "settlement amount exceeds $156,000." *Id.* 4. He also argues that his claim has not already been litigated in the state courts because the litigation in the state courts "was between [him] and [his] ex-wife." *Id.* 5. He argues that this case is different because Exelon "has not been previously challenged by [Clark] in a Court of Law at any level for failing to fulfill its contractual obligations to "Clark" under the QDRO." *Id.* In addition to the above arguments, Clark also adds Alight as a second named defendant in his Amended Complaint.

Defendants filed a motion to dismiss the Amended Complaint under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil procedure. *See* Sec. Mot., ECF No. 44.

### III.  LEGAL STANDARDS

#### a. Motion to Dismiss under Rule 12(b)(6) – Applicable Law

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. Id. at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that

determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

    **b. Motion to Dismiss under Rule 12(b)(1) – Applicable Law**

Under Rule 12(b)(1), a defendant may make a motion to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Unlike the standard for Rule 12(b)(6), "the standard to be applied to a Rule 12(b)(1) motion is much more demanding." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

When a 12(b)(1) motion attacks the complaint on its face, without contesting its alleged facts, the Court treats it like a 12(b)(6) motion—accepting the plaintiff's allegations as true. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). However, a factual 12(b)(1) motion, or one that "attacks allegations underlying the assertion of jurisdiction in the complaint," is different. *Id.* When adjudicating a factual 12(b)(1) motion, the Court need not presume that the plaintiff's allegations are true. *See Hedges*, 404 F.3d, at 750. Instead, the Court "evaluates for itself the merits of the jurisdictional claims." *Id.* (cleaned up).

**IV.   ANALYSIS**

Defendants contend that the Amended Complaint should be dismissed for two reasons. First, under Rule 12(b)(1), they argue that this Court does not have diversity jurisdiction over Clark's claim because the amount in controversy does not satisfy the minimum requirement. Second, under

Rule 12(b)(6) they argue that the *Rooker-Feldman* doctrine bars the Court from reviewing the Amended Complaint for the same reasons it barred review of the Original Complaint. The Court agrees with both arguments and addresses them in turn. It then briefly discusses a third reason for dismissal.

      **a.     Clark has not met his burden of establishing subject matter jurisdiction.**

Subject matter jurisdiction refers to a court's authority to hear certain types of cases. Federal courts have limited jurisdiction, and the "[plaintiff] bears the burden of demonstrating subject matter jurisdiction." *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). Generally, there are two types of cases over which federal courts have subject matter jurisdiction: diversity cases or cases that raise a federal question. Clark argues that diversity jurisdiction exists here.

For diversity jurisdiction to exist, Clark must show two things. First, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). Second, the suit must be between citizens of different states or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

Defendants contest the first element for diversity jurisdiction—the amount in controversy. Specifically, they argue that Clark "is asserting a breach of contract action and has not explained how he has any personal costs or penalties [that] would be recoverable under such an action." Sec Mot. 5. Defendants assert that Clark "merely made-up numbers in order to meet" the minimum requirement for diversity jurisdiction. *Id.*

Defendants' attack on Clark's subject matter jurisdiction claim is factual because they allege that the amount in controversy is actually less than $75,000. Since Defendants attack Clark's allegations underlying the assertion of jurisdiction in the Amended Complaint, the Court need not take Clark's allegations at face value. It may evaluate for itself whether Clark's jurisdictional claims

have merit. In other words, it weighs whether the amount in controversy truly exceeds $75,000 without taking Clark's word for it.

After reviewing the Amended Complaint, the Court determines that Clark has not met his burden of establishing subject matter jurisdiction. Clark simply states that "the settlement amount exceeds $156,000." He does not, however, support that conclusion with any data or further explanation. Clark asserts that payments of $782.20 per month to his ex-wife should have stopped in January 2017. That means, at the time of this Opinion, Clark's ex-wife has received 63 payments of $782.20, which totals $49,278.60.[4] It is not clear from the Amended Complaint how Clark arrives at the much higher number that he puts forward as a "settlement amount."

Clark's Original Complaint contains additional computations of alleged damages. However, he cannot rely on allegations in his Original Complaint to support his claim now because it is superseded by his Amended Complaint. *See Lazar v. Town of W. Sadsbury, PA*, No. 5:20-CV-05336, 2021 WL 2472253, at *4 (E.D. Pa. June 17, 2021). Even if the Court did consider both complaints, Clark's argument that his claim meets the minimum requirement for diversity jurisdiction is not persuasive, and the burden is on him to establish subject matter jurisdiction. Even construing Clark's pleading liberally as a pro se plaintiff, he has not met that burden. As a result, the Court determines that it does not have subject matter jurisdiction over his claim.[5]

---

[4]    The Court notes that Defendants arrived at a different number, which is further proof that Clark's Amended Complaint is anything but clear. However, neither the Court's nor the Defendants' calculation meets the required minimum for diversity jurisdiction.

[5]    As the Court stated in its prior opinion, Clark's claim does not satisfy federal question subject matter jurisdiction either. *See Clark v. Alight Sols., LLC*, No. 5:21-CV-01855, 2022 WL 43285, at *4 (E.D. Pa. Jan. 5, 2022). The Plan is a corporate benefit program, and therefore Clark's claim that he is entitled to payments under the Plan does not involve the Constitution or any other federal law. If Clark has a claim, then it arises under the QDRO.

      **b. Even if this Court had subject matter jurisdiction, the *Rooker-Feldman* doctrine bars this Court from reviewing the case.**

      The *Rooker-Feldman* doctrine bars plaintiffs who have lost in state court proceedings from claiming that the state court judgment violates their rights and then re-litigating the same issues in a federal district court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "Because the doctrine divests the court of subject matter jurisdiction, it may be raised at any time by either party or by the court sua sponte." *In re Madera*, 388 B.R. 586, 597 (E.D. Pa. 2008) (*citing Desi's Pizza, Inc. v City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003)).

      When the Court dismissed Clark's Original Complaint, it advised him that he should only file an amended complaint "if he can sufficiently allege . . . why the *Rooker-Feldman* doctrine does not prohibit the Court from reviewing the Amended Complaint." ECF No. 38. In his Amended Complaint, Clark attempts to side-step the *Rooker-Feldman* doctrine by arguing that this claim is different because it doesn't involve his ex-wife. This argument, however, is unpersuasive.

      The Court dismissed Clark's prior claim under the *Rooker-Feldman* doctrine, which wasn't against his ex-wife either. The "new" claim in his Amended Complaint is no different. Clark may have filed an amended complaint, but he did not amend the claim itself. Clark still asks this Court to interpret the QDRO. Naming a different defendant does not help Clark avoid the *Rooker-Feldman* doctrine because the claim is essentially the same, regardless of the named defendant.

      Clark has already litigated the interpretation of the QDRO and its terms three times in the State Court and lost each time. Even if Clark had a federal claim regarding the QDRO that he did not raise in the State Court, the *Rooker-Feldman* doctrine still bars this Court from hearing such a claim now because it would be "inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). The claim Clark brings here is inextricably intertwined with the prior State Court adjudications because the relief Clark seeks in this Court could only be given "if predicated upon a conviction that the state court was wrong." *Id*.

In other words, Clark asked the State Court to stop his ex-wife from receiving payments under the QDRO; the State Court declined. Clark now asks this Court to do the exact same thing. In order for this Court to give Clark what he asks for, it must first decide that the State Court was wrong. This is precisely the thing that the *Rooker-Feldman* doctrine prohibits, and accordingly the doctrine divests this Court of jurisdiction over this case.

### c. The domestic relations doctrine likely bars the Court from reviewing Clark's claim too.

In addition to the *Rooker-Feldman doctrine*, the Court notes that the domestic relations doctrine likely applies too, which bars federal courts from hearing certain domestic cases.

The QDRO is "is a domestic relations order" explaining how certain property, payments from a pension plan, should be split between divorced parties. *See Prol v. Prol*, 935 A.2d 547, 549 n.2 (Pa. Super. Ct. 2007). Thus, Clark's claim "involve[s] the entry or terms of a qualified domestic relations order where *state law* would control." *Holz v. Holz,* No. CIV. A. 99-4918, 1999 WL 1210835, at *1 (E.D. Pa. Dec. 9, 1999) (emphasis added). Under the domestic relations doctrine, the Supreme Court has held that federal district courts do not have subject matter jurisdiction over domestic cases when there is an "agreement to litigate in the state courts" or when there is a "threat that a feuding couple would play one court system off against the other." *Solomon v. Solomon*, 516 F.2d 1018, 1025 (3d Cir. 1975). Both are present in this case. Clark and his ex-wife consented that "[t]he [State] Court shall retain jurisdiction with respect to [the QDRO]," QDRO ¶ 15, and Clark has also already tried to get the same relief he seeks in this Court by bringing prior suits in the State Court.

Clark refers to his claim as many things, including a "criminal" action. However, it is really just an argument with his ex-wife over marital property (marital property in the form of retirement payments). "Even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and

expertise of state courts in this field. A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). This case therefore does not belong in federal court.[6]

## V.     CONCLUSION

This Court does not have subject matter jurisdiction over Clark's claim because he did not meet his burden of establishing diversity jurisdiction. In the alternative, this Court is barred from reviewing Clark's claim under the *Rooker-Feldman* doctrine because essentially the same claim has already been litigated in State Court. Further, the Court is also barred from reviewing the case, or abstains from reviewing the case, under the domestic relations doctrine. Accordingly, the Court dismisses the Amended Complaint with prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6]    There is yet another reason for dismissal that the Court does not analyze in detail but that is worth noting. Clark's ex-wife is an indispensable party to this suit because she has an economic interest in its outcome. Indeed, if the Court gave Clark what he asks for, then she would miss out on monthly payments she currently receives. Thus, this case could not proceed without her, and according to Defendants, Clark's ex-wife is a resident of Pennsylvania. *See* First. Mot. 6. Adding her to the case would therefore defeat diversity jurisdiction because the suit would no longer be between citizens of different states or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).